UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------- x
In re:                                                  )   Chapter 11
                                                        )
AMR CORPORATION, *et al.*,[1]                           )   Case No. 11-15463 (SHL)
                                                        )
                    Debtors.                    )   (Jointly Administered)
                                                        )
------------------------------------------------------- x
WILMINGTON TRUST COMPANY, as                            )   Case No. 1:12-cv-03967 (RWS)
collateral trustee, and U.S. BANK                       )
NATIONAL ASSOCIATION, as indenture                      )
trustee,                                                )
                                                        )
              Appellants,                             )
                                                        )
                 v.                                 )
                                                        )
AMR Corporation, *et al.*,                              )
                                                        )
              Appellee.                               )
------------------------------------------------------- x

## APPELLANTS' REPLY BRIEF

MILBANK, TWEED, HADLEY & M<sup>c</sup>CLOY LLP
1 Chase Manhattan Plaza
New York, NY 10005
Telephone: (212) 530-5000
Dennis F. Dunne
Tyson M. Lomazow

*Counsel for Appellant Wilmington Trust Company, solely in its capacity
as Collateral Trustee under 7.50% Senior Secured Notes Due 2016*

| | |
|---|---|
| JONES DAY | FOLEY & LARDNER LLP |
| James O. Johnston | Mark L. Prager |
| Joshua D. Morse | Douglas E. Spelfogel |
| 555 South Flower Street, 50th Floor | 90 Park Avenue |
| Los Angeles, CA 90071 | New York, NY 10016 |
| Telephone: (213) 489-3939 | Telephone: (212) 682-7474 |

*Counsel for Appellant U.S. Bank National Association, solely in its capacity
as Indenture Trustee under 7.50% Senior Secured Notes Due 2016*

---

[1] The "Debtors," together with the last four digits of each Debtor's federal tax identification number (if applicable), are: AMR Corporation (5172); American Airlines, Inc. (2798); American Airlines Realty (NYC) Holdings, Inc. (9347); AMR Eagle Holding Corporation (6520); Americas Ground Services, Inc. (1387); PMA Investment Subsidiary, Inc. (8617); SC Investment, Inc. (2622); American Eagle Airlines, Inc. (6404); Executive Airlines, Inc. (3166); Executive Ground Services, Inc. (1679); Eagle Aviation Services, Inc. (3043); Admirals Club, Inc. (8690); Business Express Airlines, Inc.; Reno Air, Inc.; AA Real Estate Holding GP LLC (8033); AA Real Estate Holding L.P. (5325).; American Airlines Marketing Services LLC (0265); American Airlines Vacations LLC (8253); American Aviation Supply LLC (8730); and American Airlines IP Licensing Holding, LLC.

**TABLE OF CONTENTS**

**Page**

I. PRELIMINARY STATEMENT ................................................................................... 1

II. THE ORDER APPEALED IS FINAL AND APPEALABLE ................................... 2

III. THE APPLICABLE STANDARD OF REVIEW IS *DE NOVO* ............................... 3

IV. THE TRUSTEES ARE ENTITLED TO ADEQUATE PROTECTION ................. 4

    A. The Burden Of Proof As To Adequate Protection Is On The Debtors, Not The Trustees .................................................................................. 4

    B. Even If The Trustees Had A Burden Of Showing That The Value Of Their Collateral Was Volatile And At Risk, They Did So .................................. 6

    C. The Bankruptcy Court Erred By Declining To Hold That The Alleged Equity Cushion Constituted Adequate Protection ................................ 7

VI. THE BANKRUPTCY COURT ERRED IN DENYING THE MOTION WITHOUT AFFORDING THE TRUSTEES THE EVIDENTIARY HEARING TO WHICH THEY WERE ENTITLED ............................................... 8

VII. CONCLUSION .......................................................................................................... 10

## TABLE OF AUTHORITIES

**Page**

**Cases**

*In re Adelphia Commc'ns Corp.*,
  Case No. 02-civ-9770, 2006 U.S. Dist. LEXIS 37112 (S.D.N.Y. June 6, 2006) .................3

*In re The Caldor Corp.*,
  303 F.3d 161, 166 (2d Cir. 2002) ......................................................................................3

*In re Chateaugay Corp.*,
  80 B.R. 279 (S.D.N.Y. 1987) ........................................................................................ 1-3

*In re Elmira Litho, Inc.*,
  174 B.R. 892 (Bankr. S.D.N.Y. 1994) ........................................................................... 5-6

*In re Key Book Service, Inc.*,
  Civ. Nos. B-89-424JAC, B-89-425JAC, 1989 WL 221311 (D. Conn. Dec. 13, 1989) .......2

*In re Megan-Racine Assocs., Inc.*,
  102 F.3d 671, 675 (2d Cir. 1996) .......................................................................................2

*In re O'Connor*,
  808 F.2d 1393 (10th Cir. 1987) .........................................................................................2

*Nahodil v. Rodman (In re W.T. Grant Co.)*,
  432 F. Supp. 105 (S.D.N.Y. 1977) .....................................................................................7

*In re Northwestern Corp.*,
  319 B.R. 68, 73 (D. Del. 2005) ..........................................................................................3

*People's Capital & Leasing Corp. v. Big3D, Inc. (In re Big3D, Inc.)*,
  438 B.R. 214 (9th Cir. BAP 2010) .....................................................................................5

*In re Waste Conversion Techs., Inc.*,
  205 B.R. 1004, 1006-07 (D. Conn. 1997) ..........................................................................2

*Zink v. Vanmiddlesworth*,
  300 B.R. 394 (N.D.N.Y. 2003) ..........................................................................................2

**Statutes and Rules**

11 U.S.C. § 362 ............................................................................................................... 3, 5

11 U.S.C. § 363 ............................................................................................................ 1-2, 4-6

11 U.S.C. § 507 .................................................................................................................... 8

Local Bankruptcy Rule 9014-2 .......................................................................................... 9

Fed. R. Bankr. P. 9014 ....................................................................................................... 9

I.      **PRELIMINARY STATEMENT**[2]

In the Answering Brief, the Debtors ignore that the Bankruptcy Court applied the wrong legal standard, neglected uncontroverted evidence, and disregarded governing procedural rules and orders. Tellingly, however, the Debtors do not contest the dispositive fact that, as a consequence of the Bankruptcy Court's erroneous ruling, the Debtors remain free to use the Trustees' Collateral and the Trustees continue to shoulder the risk of all postpetition decline in value without the statutory "adequate protection" – and potentially the statutory superpriority claim in the event of a failure of adequate protection – to which they are entitled under the Code. In fact, the Debtors concede that the Trustees are entitled to adequate protection, if nothing else in the form of an "equity cushion" of value of the Collateral over and above the amount of their secured claim. Yet, the Bankruptcy Court refused to order any protection whatsoever for the Trustees, notwithstanding the explicit statutory command that the Bankruptcy Court "shall" prohibit the Debtors' use of the Collateral absent an order of adequate protection.

The Debtors cannot explain that fundamental error and, as shown below, their defense of the Order fails. First, the Order is final and appealable. The Debtors neglect numerous decisions within the Second Circuit that have held that orders denying adequate protection are final and appealable, as well as binding Second Circuit authority to the effect that that orders denying motions for relief from the automatic stay – an alternative ground for relief in the Motion – are appealable as of right. *In re Chateaugay Corp.*, 880 F.2d 1509, 1512 (2d Cir. 1989).

Second, the Bankruptcy Court disregarded the plain text of the Code, which expressly states that it is the Debtors – ***not*** the Trustees – who have "the burden of proof on the issue of adequate protection" and does not require the Trustees to make a "*prima facie*" case that the value of the Collateral was at risk. 11 U.S.C. § 363(p)(1). Compounding that error, the Bankruptcy Court ignored the undisputed evidence in the record that, according to the Debtors'

---

[2]   Capitalized terms not defined in this Brief have the meanings given to them in the Appellants' Opening Brief ("Appellant Br."). The Debtors' Answering Brief is cited as "Appellee Br."

own appraisers, the value of the Collateral had declined precipitously just before the Petition Date and remained subject to the threat of further decline due, among other things, to the continuing postpetition increases in the price of jet fuel, thereby satisfying whatever *prima facie* burden (if any) the Trustees were required to satisfy.

Third, the Bankruptcy Court erred in finding (without the benefit of an evidentiary hearing) that the Trustees' interest in the Collateral was adequately protected by the equity cushion alleged by the Debtors but then refusing to expressly so hold, leaving the Trustees exposed to the entire risk that the Bankruptcy Court's conclusions as to the Collateral's value ultimately prove to be incorrect. That refusal inverted the Code's express protection of secured creditors like the Trustees and independently compels reversal of the Order.

Finally, to the extent there was any question about the weight of the evidence showing a risk of a decline in the value of the Collateral, the Bankruptcy Court was required by the Local Bankruptcy Rules and its own Case Management Order ("CMO") to hold an evidentiary hearing, which it refused to do despite the Trustees' request.

## II.   THE ORDER IS FINAL AND APPEALABLE

Citing three **out-of-Circuit** cases, the Debtors argue that the Court has no jurisdiction because "an order denying a request for adequate protection is interlocutory and not appealable." Appellee Br. at 9. This is wrong for several reasons.

First, the Debtors ignore applicable **in-Circuit** authority holding that such an order **is** final and appealable. *See, e.g., Zink v. Vanmiddlesworth*, 300 B.R. 394, 396 (N.D.N.Y. 2003) ("**In this circuit**, an order denying a motion to lift a stay is final and appealable . . . as is an order denying a motion for adequate protection.") (emphasis added) (citing *In re Megan-Racine Assocs., Inc.*, 102 F.3d 671, 675 (2d Cir. 1996) and *In re O'Connor*, 808 F.2d 1393 (10th Cir. 1987)); *In re Waste Conversion Techs., Inc.*, 205 B.R. 1004, 1006-07 (D. Conn. 1997); *In re Key Book Service, Inc.*, Civ. Nos. B-89-424JAC, B-89-425JAC, 1989 WL 221311, at *1 (D.

Conn. Dec. 13, 1989). Those cases follow directly from the Second Circuit's guidance that appellate courts should employ a flexible standard for "finality" in the bankruptcy context. *Chateaugay*, 880 F.2d at 1511 ("the concept of finality that has developed in bankruptcy matters is more flexible than in ordinary civil litigation").

Second, the Debtors neglect the fact that the Order not only denied the Trustees' request for adequate protection under section 363(e) of the Code, but also the Trustees' alternative request for relief from the automatic stay under section 362(d)(1). It is settled law in the Second Circuit that "the denial of relief from the automatic stay . . . is a final, appealable order." *Chateaugay*, 880 F.2d at 1512; *see also In re Adelphia Commc'ns Corp.*, Case No. 02-civ-9770, 2006 U.S. Dist. LEXIS 37112, at *5 (S.D.N.Y. June 6, 2006) ("[T]he Second Circuit has expressly stated that 'the denial of relief from an automatic stay in bankruptcy is equivalent to a permanent injunction and is thus a final order' subject to appellate review.") (quotation omitted). The Debtors cite no authority in which an order denying a motion for relief from the automatic stay – like the Order here – was held to be interlocutory or otherwise non-appealable.

Lastly, the finality of the Order is not diminished by the fact that the Bankruptcy Court reserved the right to "reconsider the Order" and that the Order "is expressly without prejudice to the Trustees' right to file another motion." Appellee Br. at 9. *See Chateaugay*, 880 F.2d at 1513 ("Although we agree that the bankruptcy court's order was open to modification in one year, we do not believe that this factor transforms an otherwise final order into a non-final order."); *In re Northwestern Corp.*, 319 B.R. 68, 73 (D. Del. 2005) (an order entered "without prejudice" may still be a final order where "no further work is left for the Bankruptcy Court to do with respect to Appellant's motion."). Rather, even when a court indicates that it may reconsider an issue in the future, the court's order is final where – as here – it "dispose[s] of a discrete dispute in the case." *Chateaugay*, 880 F.2d at 1513.

In sum, the Court has jurisdiction over this appeal.

### III. THE APPLICABLE STANDARD OF REVIEW IS *DE NOVO*

As explained in Appellants' Opening Brief, the Bankruptcy Court's denial of the Motion is subject to *de novo* review because the issues on appeal are pure questions of law requiring interpretation of the Code, the Bankruptcy Rules, and the Local Bankruptcy Rules. Appellant Br. at 3 (citing *In re The Caldor Corp.*, 303 F.3d 161, 166 (2d Cir. 2002)).

The Debtors suggest that some unidentified portion of the appeal involves the review of findings of fact and the Bankruptcy Court's exercise of discretion. Appellee Br. at 8. However, given that the Bankruptcy Court did not make findings of fact based on admitted evidence and never afforded the Trustees the evidentiary hearing to which they were entitled (*see* Appellant Br. at 20-24), that suggestion lacks merit.

### IV. THE TRUSTEES ARE ENTITLED TO ADEQUATE PROTECTION

#### A. The Debtors Bore The Burden of Proof As To Adequate Protection.

The Debtors' argument that the Trustees bore the burden of demonstrating a postpetition decline, or the threat of a postpetition decline, in the value of their interest in the Collateral as a condition to receiving adequate protection is wrong. Appellee Br. at 12-13.

As an initial matter, the Debtors ignore the plain language of the ***statutory*** provisions regarding the burden of proof and persuasion on a motion for adequate protection. Section 363(p) of the Code ***explicitly allocates*** the applicable burden to the debtor, and section 363(e) of the Code ***explicitly requires*** adequate protection where, as here, the debtor seeks to use collateral in which the secured creditor has shown that it has an interest. *See* Appellant Br. at 11-15. Unable to avoid the import of these explicit provisions of the Code, the Debtors resort to mischaracterizing the Trustees' position and citing inapplicable case law.

To start, the Trustees do not propose – and never have proposed – that "they are automatically entitled to adequate protection simply by filing the Motion because . . . there 'will be no harm whatsoever from the provision of adequate protection.'" Appellee Br. at 15. To the

contrary, the Trustees have consistently acknowledged what section 363(p)(2) of the Code expressly provides: that, as secured creditors, they bore the burden of proof on the issue of the "validity, priority, [and] extent of [their] interest" in the Collateral. 11 U.S.C. § 363(p)(2).

That, however, was the *only* issue on which the Trustees had a burden. *See* Appellant Br. at 13 (citing Apx. 6, Apx. 5, at ¶ 20 & n.17 and Ex. A). Once the Trustees met that burden, which they indisputably did, the Debtors were required to meet their burden "on the issue of adequate protection." 11 U.S.C. § 363(p)(1); *People's Capital & Leasing Corp. v. Big3D, Inc. (In re Big3D, Inc.)*, 438 B.R. 214, 221 n.6 (9th Cir. B.A.P. 2010) ("the statutory allocation of burdens under § 363(p) . . . dictates that while a secured creditor must prove the extent, validity, and priority of its lien in the debtor's property, . . . the chapter 11 debtor has the burden of proof on the issue of adequate protection") (internal quotation marks and brackets omitted). Nothing in section 363(p) imposes an obligation on the Trustees to make a *prima facie* showing of anything as a precondition for the Debtors to satisfy the burdens assigned to them in the statute.

Moreover, *none* of the cases cited by the Debtors for the proposition that it was the Trustees' burden to prove that the value of the Collateral had declined postpetition (or was at risk of such a decline) is apposite because *each one* involved the legal standard applicable *solely* to motions under 362(d)(1) of the Code – where a secured creditor seeks relief from the automatic stay due to an alleged lack of adequate protection – rather than to motions seeking adequate protection and, alternatively, relief from the automatic stay (like the Motion did). The Debtors conveniently ignore that one of the primary cases they cite, *In re Elmira Litho, Inc.*, 174 B.R. 892, 902-905 (Bankr. S.D.N.Y. 1994), discusses this very distinction and explains the critical difference in the burden of proof in these two contexts. *See* Appellant Br. at 15.

It makes good sense for the Code to place the burden of a *prima facie* showing, in each case, on the party seeking to take affirmative action in respect of collateral. When the secured creditor seeks to lift the stay to foreclose on its collateral (thereby removing it from the

bankruptcy estate), the creditor properly bears the burden (under section 362(d)(1)) as to adequate protection.  However, when the debtor wishes to continue to use the collateral during the pendency of a bankruptcy case while the secured creditor is automatically stayed from repossessing its property, Congress has placed the burden (under section 363(e)) on the debtor (who chose to seek bankruptcy protection in the first place).

Here, the Trustees introduced uncontroverted evidence of their interest in the Collateral and requested that the Debtors provide adequate protection as a condition to their continued use of the Collateral.  Under section 363 of the Code, it was the Debtors' unconditional burden to *prove* that the Trustees' interest in the Collateral was adequately protected.  The Bankruptcy Court erred in holding to the contrary.[3]

### B. Even If The Trustees Had A Burden Of Showing That The Value Of Their Collateral Was Volatile And At Risk, They Did So.

Even if the Trustees bore the burden (which they did not) to demonstrate that the value of their interest in the Collateral was at risk of postpetition decline, the Bankruptcy Court still erred in holding that the Trustees failed to satisfy that burden.

Nothing in the Debtors' Answering Brief dictates a different view.  In fact, the Debtors argue that the standard applicable to the Trustees' Motion is that set forth in *Elmira Litho*, which requires only that the secured creditor demonstrate a "decline in value – ***or the threat of a decline***" – in the value of its collateral.  *Elmira Litho*, 174 B.R. at 902 (emphasis added).

Here, the Trustees indisputably established that there was at least a "threat of a decline" in the value of their interest in the Collateral by submitting uncontroverted evidence that: (i) fuel

---

[3] As noted above, the Trustees also moved for relief from the automatic stay due to a lack of adequate protection, requesting the right to foreclose on the Collateral if and to the extent that adequate protection was not granted. While the Bankruptcy Court's denial of that alternative request for relief makes the Order final and appealable, the fact that the Trustees also sought relief from the stay does nothing to diminish or alter the statutory burden of proof with respect to their primary request for adequate protection as a condition to the Debtors' retention and continued use of the Collateral.  *See Elmira Litho*, 174 B.R. at 902-905.

prices had risen since the Petition Date,[4] and the Debtors had admitted that the value of the Collateral would decline upon an increase in fuel prices (Apx. 6, Ex. 6 at 17-18; Apx. 7 at 68); (ii) the Debtors had acknowledged that the value of the Collateral was volatile and subject to risks that could not be mitigated (Apx. 6, Ex. 5 at 17-45); and (iii) according to the Debtors' own appraisers, the value of the Collateral had precipitously decreased in the months leading up to the Petition Date (Apx. 3 at ¶ 12 & Ex. C).[5]

This evidence was more than sufficient to establish a "threat of a decline" in the value of the Collateral and thus satisfy whatever *prima facie* showing was required (if any) to establish Trustees' entitlement to adequate protection. The Trustees are pleased that the Debtors have recognized that the Collateral is very valuable. The Debtors' own appraisals, however, show that the value of the Collateral is volatile and subject to fluctuation. This is exactly the situation for which the Code provides "adequate protection" to secured creditors. The Bankruptcy Court erred by failing to provide the Trustees with that protection.

### C.  The Bankruptcy Court Erred By Declining To Hold That The Alleged Equity Cushion Constituted Adequate Protection.

In denying the Motion, the Bankruptcy Court apparently concluded that the obvious risk that the Collateral was subject to a threat of decline in value during the bankruptcy cases

---

[4] The Trustees introduced evidence that jet fuel was American's second-largest expense, after labor, and accounted for 29 percent of total operating costs. Apx. 3, Ex. B at 4. Evidence regarding an increase in fuel prices since the Petition Date was presented in the form of statements of the Trustees' counsel at the initial Omnibus Hearing. Apx. 7 at 68. Those statements must be accepted as true given the Bankruptcy Court's improper denial of the Trustees' request for an evidentiary hearing to establish that fact, among others. *See infra*, Section V, and Appellant Br. at 20-23.

[5] The Debtors cite to an undisclosed appraisal of the Collateral prepared in May 2012, which suggests that the value of the Collateral, at that time, was at least $2.65 billion. Appellee Br. at 18. Because this appraisal was issued *after* the Motion was denied, it was improper for the Debtors to refer to it: it was not part of the "documents and evidence bearing on the proceedings below and considered by the bankruptcy judge in reaching his decision," and thus may not be considered by this Court. *Nahodil v. Rodman (In re W.T. Grant Co.)*, 432 F. Supp. 105, 106 (S.D.N.Y. 1977); *see also Motion of Debtors Pursuant to Fed. R. Bankr. P. 8006 to Strike Certain Items Designated by Wilmington Trust Company and U.S. Bank National Association to be Included in the Record on Appeal*, *In re AMR Corp.*, Case No. 11-15463 (April 25, 2012) (Docket No. 2445). In any event, that appraisal ***demonstrates*** the Trustees' entitlement to adequate protection, as it confirms the Debtors' view that the Collateral is subject to ***extreme fluctuations in value*** (from a low-end range of $2.35 billion in February 2011 to a low-end range of $1.53 billion in November 2011 to a low-end range of $2.65 billion in May 2012). The Debtors' description of the February 2011 appraisal as coming from a "Bloomberg article" – Appellee Br. at 5 – is mystifying given that the Trustees submitted the February 2011 appraisal as evidence. Apx. 6, Ex. 5, Appendix II.

somehow was ameliorated by "evidence of a substantial equity cushion." Apx. 7 at 75; Apx. 8 at 29. However, notwithstanding its finding that such an equity cushion existed, the Bankruptcy Court inexplicably declined to *find* that the equity cushion actually provided adequate protection. *See* Appellant Br. at 17-19.

Yet, even the Debtors acknowledge that this is the only logical holding based on the Bankruptcy Court's findings. *See* Appellee Br. at 17 ("based on the . . . undisputed size of the equity cushion, the Debtors satisfied any burden of proof that the Trustees *were adequately protected* and the *additional* adequate protection requested in the Motion was . . . unnecessary.") (emphasis added). There is no legal authority supporting the Bankruptcy Court's apparent contrary holding: that, based on the existence of an equity cushion, *no adequate protection whatsoever* is required.

The Debtors recognize this, and resort to denigrating the Trustees' legitimate desire to avail themselves of their statutory right to an order of adequate protection. *See* Appellee Br. at 18 (calling Trustees' request "self-serving" and a "thinly veiled attempt to bootstrap potential future arguments"). Hardly. An order of adequate protection would ensure that the Trustees are protected in the event that the Bankruptcy Court's "finding" of an equity cushion (itself not the product of an evidentiary hearing) proves to be erroneous and the value of the Collateral ultimately is determined to be less than the amount of the Trustees' claims. *See* 11 U.S.C. § 507(b) (providing superpriority administrative claim to a secured creditor where adequate protection fails). Absent such an order, the Trustees are exposed to arguments – however meritless they may be[6] – that the Trustees are not entitled to protection under section 507(b) in the event that the value of the Collateral (which the Debtors concede to be highly volatile) ultimately is determined to be less than the value that the Bankruptcy Court

---

[6] The Trustees believe that they are entitled to the protections of section 507(b) given the circumstances and context of the Bankruptcy Court's Order. The Trustees expect the Debtors to take a contrary position should it prove convenient for them to do so.

- 8 -

"found" in connection with the Motion.  There is nothing "self-serving" in the Trustees' desire to invoke the legal rights provided by the Code that are designed to protect against future damages (*e.g.*, postpetition decline in the value of the Collateral) they may suffer as a consequence of actions of others (*e.g.*, the Debtors' use of the Collateral at a time when the Trustees are stayed from exercising their remedies).

The Bankruptcy Court's outright *denial* of the Trustees' request for adequate protection – rather than *holding* that the Trustees are adequately protected by an equity cushion and thus not entitled to *additional* adequate protection – places on the Trustees the entire risk in the event the Bankruptcy Court's "valuation" of the Collateral, turns out to be inaccurate.  Such an outcome inverts the Code's intended allocation of risk in cases where a debtor uses a secured creditor's collateral, and constitutes an independent basis for reversal of the Order.

## V. THE BANKRUPTCY COURT ERRED IN DENYING THE MOTION WITHOUT AFFORDING THE TRUSTEES THE EVIDENTIARY HEARING TO WHICH THEY WERE ENTITLED

The Debtors argue that "[i]t is unnecessary to conduct an evidentiary hearing on a contested matter unless there are disputed material fact issues a Bankruptcy Court cannot decide based on the record."  Appellee Br. at 19.  There was such a disputed material issue of fact here: whether the Collateral was subject to a threat of postpetition decline in value given, among other things, the Debtors' own appraisals indicating that the Collateral had declined in value by more than $800 million in just the nine months before the Petition Date, rising jet fuel prices, and the Debtors' acknowledgement regarding volatility of the Collateral's value.

Notably, the Debtors offered no evidence that the allegedly plummeting value of the Collateral shown by their own appraisers somehow screeched to a halt on the Petition Date.  The Debtors also did not dispute that rising fuel costs negatively impact the value of the Collateral, Apx. 6, Ex. 6 at 17-18, Apx. 7 at 68, and that they are unable to mitigate all risks to the volatile value of the Collateral.  Apx. 6, Ex. 5 at 17-45.  Without an evidentiary hearing, the Bankruptcy

Court was in no position to ascertain the scope of the threat to the Collateral value posed by the risks shown by the evidence. At a minimum, the Trustees raised a disputed material issue of fact, which entitled them to a hearing. *See* Appellant Br. at 22 (citing Fed. R. Bankr. P. 9014(a), (d); Fed. R. Bankr. P. 9014(d), advisory comm. note to 2002 amendment).

Local Bankruptcy Rule 9014-2 and the Bankruptcy Court's own CMO specifically provide that "[t]he first scheduled hearing in a contested matter will not be an evidentiary hearing at which witnesses may testify, unless . . . the Court gives prior notice to the parties that such hearing will be an evidentiary hearing. Local Bankr. R. 9014-2; Apx. 2 ¶ 38. The Bankruptcy Court gave no indication to the parties that the Omnibus Hearing would be evidentiary, and specifically confirmed this at the outset of the Omnibus Hearing. Apx. 7 at 30.

As a consequence, the Bankruptcy Court was required by the Local Rules and its own CMO to hold a follow-up evidentiary hearing, particularly given that the Trustees stated that they were prepared to submit further evidence of a threat of a decline in the value of the Collateral at a subsequent evidentiary hearing. Apx. 7 at 62. This is yet another independent ground for reversal of the Order.

## VI. CONCLUSION

For the foregoing reasons, the Order should be reversed.

Dated: September 21, 2012  **MILBANK, TWEED, HADLEY & M<sup>c</sup>CLOY LLP**
New York, New York

                                        By: */s/ Tyson M. Lomazow*
                                             Dennis F. Dunne
                                             Andrew M. Leblanc
                                             Tyson M. Lomazow
                                             1 Chase Manhattan Plaza
                                             New York, NY 10005
                                             Telephone: (212) 530-5000

                                    *Counsel for Appellant Wilmington Trust Company, solely in its capacity as Collateral Trustee under 7.50% Senior Secured Notes Due 2016*

        James O. Johnston (*pro hac vice* application pending)
        Joshua D. Morse (*pro hac vice* application pending)
        JONES DAY
        555 South Flower Street, 50th Floor
        Los Angeles, CA 90071
        Telephone:  (213) 489-3939

        Mark L. Prager
        Douglas E. Spelfogel
        FOLEY & LARDNER LLP
        90 Park Avenue
        New York, NY 10016
        Telephone:  (212) 682-7474

*Counsel for Appellant U.S. Bank National Association, solely in its capacity as Indenture Trustee under 7.50% Senior Secured Notes Due 2016*