UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------X

In Re:

AMR CORPORATION, et al.,                                    12 Civ. 3967

                            Debtors.                        OPINION

------------------------------------------X

WILMINGTON TRUST COMPANY, as
collateral trustee, and U.S. BANK
NATIONAL ASSOCIATION, as Indenture
Trustee,

                            Appellants,

        -against-

AMR Corporation, et al.,

                            Appellee.

------------------------------------------X

                Attorneys for Appellant
                Wilmington Trust Company

                MILBANK, TWEED, HADLEY & MCCLOY LLP
                1 Chase Manhattan Plaza
                New York, NY  10005
                By:  Tyson M. Lomazow, Esq.

                Attorneys for Appellant
                U.S. Bank National Association

                JONES DAY
                555 South Flower Street
                Los Angeles, CA  90071
                By:  James O. Johnston, Esq.

FOLEY & LARDNER LLP
90 Park Avenue
New York, NY  10016
By:  Mark L. Prager


Attorneys for Appellee

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue, 25th Floor
New York, NY  10153
By:  Stephen Karotkin, Esq.

**Sweet, D.J.**

Wilmington Trust Company, solely in its capacity as collateral trustee (the "Collateral Trustee") with respect to certain 7.5% Senior Secured Notes Due 2016 (the "Senior Secured Notes") issued by appellee American Airlines, Inc. ("American"), and guaranteed by appellee AMR Corporation ("AMR"), and U.S. Bank National Association, solely in its capacity as indenture trustee (the "Indenture Trustee" and, together with the Collateral Trustee, the "Trustees") with respect to the Senior Secured Notes, have appealed from an Order entered March 12, 2012 (the "Order") by the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") denying their motion for adequate protection, or, in the alternative, for relief from the automatic stay (the "Motion"), in respect of their interest in the collateral securing the Senior Secured Notes (the "Collateral"). Upon the conclusions set forth below, the Order is affirmed, and the appeal is dismissed.

Skilled advocates have ably presented the issues raised by this appeal. The motion for adequate protection and its alternative for relief from the automatic stay present differing burdens of proof and factual considerations which were

2

presented to the Bankruptcy Court in its non-evidentiary Omnibus Hearing. Appendix to Appellants' Opening Brief ("Apx.") 7 at 68. The nature of that hearing and the implications of the relief sought are largely responsible for the conclusions stated below.

**Prior Proceedings**

On March 15, 2011, less than nine months before the commencement of the bankruptcy cases that give rise to the instant appeal, American issued the $1,000,000,000 Senior Secured Notes pursuant to an Indenture among American, AMR, and the Trustees (the "Indenture"). See Apx. 3 ¶ 3.

The Senior Secured Notes are secured pursuant to (a) the Indenture, (b) the Collateral Trust Agreement, dated as of March 15, 2011, among American, the other grantors from time to time party thereto, the Trustees, and Citibank (South Dakota), N.A., as junior lien representative (the "Collateral Trust Agreement"), (c) the Priority Lien Security Agreement (Slots, Gate Leaseholds and Route Authorities), dated as of March 15, 2011, between American and the Collateral Trustee (the "Priority Lien Security Agreement"), and (d) the Collateral Account Control Agreement, dated as of March 15, 2011, among American and the Trustees (collectively with the Indenture, the

3

Collateral Trust Agreement, and the Priority Lien Security Agreement, the "Note Documents").  Apx. 3.

As set forth in the Note Documents, the Senior Secured Notes are secured by a validly-granted and properly-perfected first priority security interest in and lien on the "Collateral," which consists generally of the following:

a.    all of American's current and future right, title and interest in specified Route Authorities, Slots and Gate Leaseholds;

b.    all of American's right, title and interest in certain collateral proceeds accounts and all cash, checks, money orders and other items American paid, deposited, credited or holds therein; and

c.    all of American's right, title and interest in all proceeds of any kind with respect to the foregoing.

Apx. 3 at ¶ 4. That Collateral enables American to provide international "Scheduled Services" to London, Japan and China and is utilized by American every day.  Apx. 3; Apx. 5 ¶ 1.

In connection with American's issuance of the Senior Secured Notes, the accounting firm Morton, Beyer & Agnew ("MBA") prepared an appraisal of the Collateral dated as of February 16, 2011 (the "February Appraisal"). In that appraisal, MBA opined

4

that the Collateral had value of at least $2.37 billion. See
Apx. 3 ¶ 12.

On November 28, 2011, MBA prepared an updated
appraisal of the Collateral at the request of American (the
"November Appraisal"). The November Appraisal valued the
Collateral as low as $1.53 billion. See Apx. 3.

The next day, on November 29, 2011 (the "Commencement
Date"), AMR and its related debtors[1] (collectively, the
"Debtors") each commenced a voluntary case under chapter 11 of
the Bankruptcy Code.  Debtors' Appendix 1.

On February 8, 2012, the Trustees filed the Motion,
alleging that the value of their interest in the Collateral was
at risk of diminution "if American fails to utilize the
Collateral adequately or is not otherwise in compliance with the

---

[1]   In addition to AMR, the other debtors are: American
Airlines, Inc.; American Airlines Realty (NYC) Holdings, Inc.;
AMR Eagle Holding Corporation; Americas Ground Services, Inc.;
OPMA Investment Subsidiary, Inc.; SC Investment, Inc.; American
Eagle Airlines, Inc.; Executive Airlines, Inc.; Executive Ground
Services, Inc.; Eagle Aviation Services, Inc.; Admirals Club,
Inc.; Business Express Airlines, Inc.; Reno Air, Inc.; AA Real
Estate Holding GP LLC; AA Real Estate Holding LP.; American
Airlines Marketing Services LLC; American Airlines Vacations
LLC; American Aviation Supply LLC; and American Airlines IP
Licensing Holding, LLC.

applicable regulations" or if there was "a downturn in the prospects of the airline industry — or, indeed, a downturn in general global macroeconomic conditions . . . ." Apx. ¶ 11.   In support of this contention, the Trustees noted that the value of the Collateral had declined in value by over $840 million — or more than 35% of its total value — in the nine months preceding the Commencement Date.   Id. ¶ 12.

The Motion sought two forms of relief.   The Trustees' primary request, made pursuant to 11 U.S.C. § 363(e) ("§363(e)"), was for the Bankruptcy Court to impose certain conditions[2] (the "Conditions") governing the Debtors' continued

---

[2]  The Trustees sought an order requiring the Debtors to:

(i)   comply with all laws, ordinances, orders, rules, regulations and requirements of aviation authorities that exercise jurisdiction over the issuance or authorization relating to the Collateral;

(ii)  maintain and preserve the Collateral pursuant to the authority granted by the applicable aviation authorities;

(iii) use commercially reasonable efforts to defend the Collateral against claims and demands of parties claiming an interest in the Collateral that is adverse to the Trustees or any other secured party under the Notes Documents;

(iv)  make regularly scheduled post-petition interest payments to the secured parties in accordance with the terms of the Indenture and the Notes;

use of the Collateral, so as to provide adequate protection of the Trustees' interest in the Collateral.[3]

In the alternative, the Trustees sought an order pursuant to 11 U.S.C. § 362(d) ("§362(d)") granting relief from the automatic stay, so as to enable the Trustees to exercise their respective rights and remedies with respect to the Collateral.

On February 22, 2012, the Debtors filed an objection to the Motion (the "Objection"), Apx. 4, contending that (i) there was no evidence of a post-petition decline, or threat of a post-petition decline, in the value of the Trustees' interest in the Collateral; (ii) the November Appraisal did not take into account various cost saving measures implemented and to be

---

    (v)   provide access to the Debtors' books and records or any other pertinent information relating to the Collateral for inspection by the Trustees;

    (vi) pay the Trustees' fees and expenses (including the fees and expenses of their respective professionals); and

    (vii)provide Wilmington Trust with replacement liens on all Collateral acquired by the Debtors after the Commencement Date.

[3] As a procedural corollary, the Trustees also requested a modification of the automatic stay to the extent necessary in order to impose the requested conditions.

implemented during the Debtors' chapter 11 cases; (iii) the
Trustees' interest in the Collateral was already more than
adequately protected by an ample equity cushion; and (iv) the
Trustees were not entitled to adequate protection to preserve or
enhance their equity cushion.  Id. ¶¶ 2-4, 10, 14-17.

On February 24, 2012, the Trustees filed their reply
to the Objection (the "Reply").  Apx. 5.  The Trustees conceded
the Collateral was worth more than the outstanding amount of the
Notes, id. ¶ 7, but still claimed an entitlement to their
requested adequate protection package because, inter alia, there
"will be no harm whatsoever from the provision of adequate
protection" and Bankruptcy Courts "routinely grant adequate
protection to secured lenders."  Id. ¶¶ 12, 15.

On February 29, 2012, the Motion was heard by the
Bankruptcy Court as one of 34 matters under consideration at the
omnibus hearing held on that date (the "Hearing").  See Apx. 7
at 1-7.

Following argument on the Motion, the Bankruptcy Court
found that the Trustees bore a prima facie burden to
"demonstrate[] that the value of the collateral was decreasing
or likely to decrease during the pendency of these cases," and

8

concluded that the Trustees failed to meet this burden. Id. at
75.  In so deciding, the Bankruptcy Court noted that: (i) the
ranges of values of the Collateral stated in the November
Appraisal reflected a prepetition decline in the value of the
Collateral that was less dramatic than what the Trustees alleged
in the Motion; (ii) the Trustees failed to submit evidence of
post-petition value of the Collateral; (iii) the Debtors
submitted undisputed evidence that the Trustees held at least a
50% equity cushion in the Collateral; and (iv) the Trustees
failed to submit persuasive evidence that the Debtors would fail
to utilize the Collateral or comply with applicable federal
government regulations. Id. at 75-76.

          In addition, the Bankruptcy Court declined to accede
to the request of counsel for one of the Trustees, who asked
that if the Bankruptcy Court were inclined to deny the Motion,
it premise such a denial upon an express finding that adequate
protection existed as a result of the existence of an equity
cushion to ensure that the Trustees would be entitled to a
superpriority administrative claim under 11 U.S.C. § 507(b)
should the adequate protection fail and the value of their
interest in the Collateral be adversely affected. See Apx. 7 at
63; Appellants' Opening Brief at 19.  In rejecting this request,
the Bankruptcy Court noted the risk of affecting substantial

9

interests of the parties in the future as a result of making such a preliminary ruling without engaging in a full evidentiary hearing.  Apx. 7 at 63-65.

On March 12, 2012, the Bankruptcy Court entered the Order, which denied the Motion without prejudice for the reasons set forth on the record at the Hearing.  Apx. 9.  On March 26, 2012, the Trustees filed a Notice of Appeal from the Order. Apx. 10.

The Trustees' appeal of the Bankruptcy Court's denial of the Motion (the "Appeal") was heard by this Court and marked fully submitted on October 24, 2012.

**Standard of Review**

A district court reviews a bankruptcy court's findings of fact for clear error.  In re Adelphia Comms. Corp., 367 B.R. 84, 90-91 (S.D.N.Y. 2007).  A finding of fact is clearly erroneous if, after reviewing the entirety of the evidence, "the reviewing court is left with the definite and firm conviction that a mistake has been committed."  United States v. U.S. Gypsum Co., 333 U.S. 364, 395 (1948).

In contrast, a district court applies de novo review to a bankruptcy court's conclusions of law.  Adelphia, 367 B.R. at 90-91.  Accordingly, a bankruptcy court's interpretation of the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and the local bankruptcy rules for the United States Bankruptcy Court for the Southern District of New York (the "Local Bankruptcy Rules") are subject to de novo review.  See In re Caldor Corp., 303 F.3d 161, 166 (2d Cir. 2002).

A district court reviews matters within a bankruptcy court's discretion under an abuse of discretion standard.  In re Crysen/Montenay Energy Co., 166 B.R. 546, 549-50 (S.D.N.Y. 1994) (internal citations omitted).  "The standard to be applied is thus, 'not what this Court would have done under the same circumstances, but whether, in light of the record as a whole, the bankruptcy court's decision was reasonable.'"  Id. at 550 (quoting In re United Merchants and Mfrs., Inc., 126 B.R. 149, 150 (S.D.N.Y. 1991)).

**The Order Denying Adequate Protection and, in the Alternative, Relief from the Automatic Stay Was Final and Therefore Appealable**

Title 28 of the United States Code sets forth the requirements for the exercise of subject matter jurisdiction by a District Court over an appeal from a Bankruptcy Court order:

> (a)  The district courts of the United States shall have jurisdiction to hear appeals
>
> (1)  from final judgments, orders, and decrees;
>
> [. . .] and
>
> (3)  with leave of the court, from . . . interlocutory orders and decrees.

28 U.S.C. § 158(a)(1), (3).

Accordingly, for this Court to consider the Appeal, the Order must either be considered "final" under section 158(a)(1) ("§158(a)(1)"), or else must be of the nature that renders it appropriate for interlocutory review pursuant to section 158(a)(3) ("§158(a)(3)").  See In re Chateaugay Corp., 80 B.R. 279, 285 (S.D.N.Y. 1987).

As for the Trustees' alternative motion for relief from the automatic stay pursuant to §362(d), the Second Circuit

12

has unequivocally held that a bankruptcy court's order denying such a motion is "a final, appealable order . . . ." In re Chateaugay Corp., 880 F.2d 1509, 1511-12 (2d Cir. 1989). While there is no such binding precedent with respect to the Trustees' primary motion seeking adequate protection pursuant to §363(e), district courts in this Circuit have consistently viewed orders denying such a request as final and therefore appealable pursuant to §158(a)(1). See Zink v. Vanmiddlesworth, 200 B.R. 394, 396 (N.D.N.Y. 2003) (noting that "[i]n this Circuit . . . and order denying a motion for adequate protection" is "final and appealable"); In re Waste Conversion Techs., Inc., 205 B.R. 1004, 1006-07 (D. Conn. 1997); In re Best Prods. Co., 149 B.R. 346, 347 (S.D.N.Y. 1992); In re Key Book Serv., Inc., Civ. Nos. B-89-424 (JAC) & B-89-425 (JAC), 1989 WL 221311, at *1 (D. Conn. Dec. 13, 1989). The same position has been adopted by courts in a number of other circuits. See In re O'Connor, 808 F.2d 1393, 1395 n. 1 (10th Cir. 1987); In re Sankey, 307 B.R. 674, 677-78 (D. Alaska 2004); Fed. Nat'l Mortgage Ass'n v. Dacon Bollingbrook Assocs. Ltd. P'ship, 153 B.R. 204, 206-07 & 210-12 (N.D. Ill. 1993), In re Grant Broad. Of Phila., Inc., 75 B.R. 819, 821-22 (E.D. Pa. 1987).

Although, as noted by the Debtors, there are instances where an order denying a motion for adequate protection has been

13

held to be interlocutory rather than final for §158 purposes,
see In re Alchar Hardware, 730 F.2d 1386, 1388 (11th Cir. 1984);
In re Kalian, 191 B.R. 275, 278 (D.R.I. 1996), the weight of the
authority—both overall, and particularly within this Circuit—
supports the contrary position.  Accordingly, the portion of the
Order denying the Trustees' motion for adequate protection
pursuant to §363(e) is considered a final order that is
appealable pursuant to §158(a)(1).

The Debtors contend that, notwithstanding the above,
the Bankruptcy Court's denial of the motion for adequate
protection in this particular case is not final for §158
purposes because the Bankruptcy Court expressly invited the
Trustees to "come back when there is a change in circumstances."
Apx. 7 at 76.  However, that statement by the Bankruptcy Court
was merely a recapitulation of the express language of §363(e),
which provides that a court shall "at any time, on request of an
entity that has an interest in property used . . . by the
[debtor] . . . as is necessary to provide adequate protection of
such interest." party may move for adequate protection "at any
time."  Id.  In other words, there was no special significance
to the Bankruptcy Court's words in this case, as any denial of a
motion for adequate protection is *by definition* without
prejudice, because the statute itself provides that adequate

14

protection is available whenever the circumstances dictate a need for it.  If, *arguendo*, the Debtors' argument were to be accepted, it would effectively mean that no order denying a motion for adequate protection would *ever* be considered final for §158 purposes.  The cases cited above, both from this Circuit and from others, represent considerable authority rejecting such a proposition.  Debtors' argument is therefore unavailing.

Since the Order is final with respect to its denial of the Trustees' primary request for adequate protection pursuant to §363(e) as well as its denial of the Trustees' alternative request for relief from the automatic stay pursuant to §362(d), this Court has jurisdiction over the appeal of the Order pursuant to 28 U.S.C. § 158(a)(1).

**The Bankruptcy Court's Misapplication of the Burden of Proof in the Motion for Adequate Protection was Harmless Error**

In analyzing the Motion, the Bankruptcy Court held that "the burden is on the movants first to make a prima facie case, and the prima facie case . . . is that you have to prove a decline in value or a threat of a decline . . . ."  Apx. 7 at 62.  While this was correct with respect to the Trustees'

15

alternative motion pursuant to §362(d), it was erroneous with respect to the Trustees' primary motion pursuant to §363(e).

A party seeking relief from an automatic stay pursuant to §362(d) "has the burden of proof on the issue of the debtor's equity in property, [and] the party opposing such relief has the burden of proof on all other issues."  11 U.S.C. § 362(g). Thus, in order for secured creditors such as the Trustees to meet their initial burden on a §362(d) motion, they must show that there has been a decline (or at least that there is a real threat of decline) in the value of the collateral at issue; only upon such a showing does the burden shift to the debtor to prove that the collateral at issue is not, in fact, declining in value.  See In re Balco Equities Ltd., Inc., 312 B.R. 734, 751 (Bankr. S.D.N.Y. 2004) (citing In re Elmiro Litho, Inc., 174 B.R. 892, 902 (Bankr. S.D.N.Y. 1994)); In re Anthem Cmtys./RBG, LLC, 267 B.R. 867, 871 (Bankr. D. Colo. 2001); In re Obligo, 328 B.R. 619, 651 (Bankr. E.D.N.Y. 2005); In re WorldCom, Inc., No. 02-13533 (AJG), 2003 WL 22025051, at *6 (Bankr. S.D.N.Y. Jan. 30, 2003); In re Brutsche, No 11-11-13326 (SA), 2012 WL 526047, at *3 (Bankr. D.N.M. Feb. 16, 2012).  The Bankruptcy Court's analysis was therefore correct insofar as the Trustees' request for relief from the automatic stay.

16

However, with respect to the Trustees' primary motion for adequate protection pursuant to §363(e), the statute mandates that "the [debtor] has the burden of proof on the issue of adequate protection; and the entity asserting an interest in property has the burden of proof on the issue of validity, priority, or extent of such interest." 11 U.S.C. 363(p). Thus, when a secured creditor moves for adequate protection pursuant to §363(e), it need only establish the validity of its interest in the collateral, while "the Debtor bears the initial burden of proof as to the issue of 'adequate protection.'" In re Village Green I, GP, 435 B.R. 525, 530 (Bankr. W.D. Tenn. 2010). The movant on a §363(e) motion therefore bears a much lighter burden than the movant on a §362(d) motion.

This disparity is noted in Elmira Litho, 174 B.R. 892, which is cited by both parties and is the only case within this Circuit to directly address the issue. Elmira Litho held that while the movant on a §362(d) motion "must prove [a] decline in value—or the threat of decline—in order to establish a *prima facie* case," id. at 902, "[t]he burden of proof on motion under §363(e) is governed by §363([p]),'" which merely "requires the party asserting an interest in property to prove the 'validity, priority, or extent of such interest, and imposes on the [debtor-in-possession] the 'burden of proof on the issue of

17

adequate protection.'" Id. at 905 (quoting 11 U.S.C. §
363(p)(1) & (2)) (citations omitted).[4]

The Bankruptcy Court erred in its analysis of the
Trustees §363(e) motion for adequate protection because it
effectively placed the burden upon the Trustees to make a prima
facie showing that there was no adequate protection, see Apx. 7
at 62, when in fact the Trustees were merely required to
establish the validity of their interest in the Collateral
(which was unchallenged), while the Debtors had the burden of
affirmatively demonstrating that the Trustees' interest in the
Collateral was adequately protected without the conditions
sought by the Trustees. See 11 U.S.C. §363(p); Elmira Litho,
174 B.R. at 902-05.

The Bankruptcy Court's error, however, was harmless,
as the Debtors established that that the Trustees were
adequately protected under the existing conditions, and

---

[4] The cases cited by the Debtors in support of their
position that, with respect to the §363(e) motion for adequate
protection, the Trustees bore the initial burden of proving an
actual or threatened decline in Collateral value, see Answering
Brief of AMR Corporation, et al., In Opposition to Appeal of
Wilmington Trust Company and U.S. Bank National Association at
12-13, are inapposite, as they discuss the burden of proof
applicable to a §362(d) motion for relief from an automatic
stay.

18

therefore that there was no need to implement the Conditions sought by the Trustees. As the Bankruptcy Court noted, the Debtors asserted the existence of an equity cushion that they claimed to be "at least fifty percent" of the Collateral, Apx. 7 at 75, and even the Trustees acknowledged as being "north of the twenty percent that is often relied upon by courts in making their determination." Apx. 7 at 76. It is well-settled that the existence of an equity cushion can be sufficient, in and of itself, to constitute adequate protection. See In re Fortune Smooth (U.S.) Ltd., No. 93-40907 (JLG), 1993 WL 261478, at *6 (Bankr. S.D.N.Y. July 6, 1993); In re Mellor, 734 F.2d 1396, 1400 (9th Cir. 1984) ("In fact, it has been held that the existence of an equity cushion, standing alone, can provide adequate protection."); Obligo, 328 B.R. at 651; In re Elmira Litho, Inc., 174 B.R. 892, 904 (Bankr. S.D.N.Y. 1994)) ("An equity cushion, therefore, provides adequate protection if it is sufficiently large to ensure that the secured creditor will be able to recover its entire debt from the security at the completion of the case."); In re Johnston, 38 B.R. 34, 36 (Bankr. D. Vt. 1983)("It is well settled that an 'equity cushion' or 'value cushion' in and of itself may provide adequate protection for a secured creditor"). Accordingly, the equity cushion in the instant case — which all parties agreed was at least "north of twenty percent" of the Collateral, see

19

Apx. 7 at 75-76 — was a sufficient basis upon which to deny the
Trustees' §363(e) motion for implementation of the Conditions.

"[I]t is well-established that, where both parties
have offered evidence, and where there is no evidentiary tie,
any improper assignment of the burden of proof is harmless since
the party supported by the weight of the evidence will prevail
regardless of which party bore the burden of persuasion, proof,
or preponderance." TransCanada Pipelines Ltd. V. USGen New
England, Inc., 458 B.R. 195, 215 (D. Md. 2011) (quoting Blodgett
v. Comm'r, 394 F.2d 1020, 1039 (8th Cir. 2005)) (quotation marks
omitted). Here, the Bankruptcy Court's erroneous assignment of
the burden to the Trustees was harmless, since the Debtors
asserted the existence of an equity cushion that was, by all
accounts, "north of twenty percent" of the Collateral – to
establish that the Trustees' interest in the Collateral was
adequately protected. See Fortune Smooth, 1993 WL 261478, at
*6; Elmira Litho, 174 B.R. at 904.  Since the Bankruptcy Court
reached the correct result in denying the Trustees' §363(e)
motion reversal of the decision is not required.[5]

_____

[5] The Trustees also contend that the Bankruptcy Court's
ruling was erroneous because it failed to "expressly hold that
the alleged equity cushion constituted adequate protection."
Appellants' Opening Brief at 18.  This argument is unavailing.
During the Hearing, the Bankruptcy Court gave numerous bases for

## An Evidentiary Hearing on the Motion Was Unnecessary

The Trustees contend that the Bankruptcy Court erred in failing to hold an evidentiary hearing on the Motion. Appellants' Opening Brief at 20.  In fact, no such hearing was requested, nor was one necessary.

The Trustees' Motion initiated a "contested matter" subject to Bankruptcy Rule 9014. See Fed. R. Bankr. P. 9014 & 4001. It is unnecessary to conduct an evidentiary hearing on a contested matter unless there are disputed issues of material fact that a Bankruptcy Court cannot decide based on the record. See Powers v. Am. Honda Fin. Corp., 216 B.R. 95, 97 (N.D.N.Y. 1997) (affirming Bankruptcy Court denial of a hearing on a motion to lift stay under section 362(d) because no material facts were in dispute); In re Khachikyan, 335 B.R. 121, 126–27 (B.A.P. 9th Cir. 2005) (noting Bankruptcy Rule 9014 only

---

its decision, see Apx. 7 at 74-76, and in the Order the Bankruptcy Court expressly stated that the Motion was denied for the reasons set forth on the record at the Hearing, see Apx. 9. The Trustees have failed to present any authority supporting the position that the Bankruptcy Court acted improperly in this regard.  Moreover, the Order was issued without prejudice, see Apx. 9, so to the extent that the Trustees believe that their rights were not properly preserved, they are free to file another motion to ameliorate the issue.

21

requires an evidentiary trial when there is a genuine factual

dispute); see also Fed. R. Bankr. P. 9014(d) (requiring

testimony of witnesses only for disputed material fact issues);

Advisory Committee Note to 2002 Amendment (stating that an

evidentiary hearing is not required unless there is a genuine

factual dispute). Therefore, "[w]here the parties do not request

an evidentiary hearing or the core facts are not disputed, the

bankruptcy court is authorized to determine contested matters .

. . on the pleadings and arguments of the parties, drawing

necessary inferences from the record." In re Gonzalez-Ruiz, 341

B.R. 371, 381 (B.A.P. 1st Cir. 2006).


       As the Bankruptcy Court noted, the contentions of the

Trustees did not establish a post-petition decline in the value

of the Collateral, and only raised "inferences" of a threat of

decline that were insufficiently cogent to establish the

necessity of 362(d) relief. Apx. 7 at 74. Since the Trustees

failed to submit viable evidence of a post-petition decline or

threat of decline, there was no genuine factual dispute as to

whether or not they met their prima facie burden pursuant to

§362(d), and it was proper for the Bankruptcy Court to rule on

the §362(d) motion without an evidentiary hearing. See Powers,

216 B.R. at 97. Similarly, with respect to the §363(e) motion,

there was no genuine factual dispute as to whether a significant

equity cushion existed, as the existence of a cushion of more than twenty percent of the Collateral was uncontested, see Apx. 7 at 75-76, so it was proper for the Bankruptcy Court to rule on the §363(e) motion without conducting an evidentiary hearing. See Powers, 216 B.R. at 87.

Moreover, since the Trustees did not affirmatively request an evidentiary hearing in the Motion or the Reply, the Bankruptcy Court was under no obligation to hold such a hearing. See In re Blaise, 219 B.R. 946, 949 (B.A.P. 2d Cir. 1998) (generally holding that a Court did not err in denying a motion without an evidentiary hearing because movant did not affirmatively request such a hearing). Trustees' counsel's general statement that "we're happy to put this over for an evidentiary hearing," Apx. 7 at 62, does not constitute the type of affirmative request necessary to trigger an obligation on the part of the bankruptcy court. See Blaise, 219 B.R. at 949; Powers, 216 B.R. at 97.

Finally, the Bankruptcy Court did not violate the Trustees' due process rights. Due process requires that a person be given notice and an opportunity to be heard before being deprived of property. See, e.g., Jones v. Flowers, 547 U.S. 220, 223 (2006). In this case, the Trustees were heard and made

23

arguments in support of the Motion at the Hearing. The
Bankruptcy Court considered the Trustees' arguments, but
ultimately rejected them.  Apx. 7 at 74-76.  This constitutes
sufficient process to vindicate the Trustees' constitutional
rights.  See In re Bartle, 560 F.3d 724, 729 (7th Cir. 2009)
("The parties are entitled to an opportunity to be heard, not to
a particular type of hearing.").  The Trustees' reliance on In
re Rijos, 263 B.R. 382 (B.A.P. 1st Cir. 2001), does not salvage
their due process argument because, in that case, the First
Circuit held that the bankruptcy court denied the debtors' due
process rights by ruling on their summary judgment motion
without scheduling or holding an hearing on the motion or
otherwise affording the debtors an opportunity to present
evidence in support of the motion.  Id. at 387.  In contrast, in
the instant case, a hearing was held in which the Trustees were
given a full and fair opportunity to be heard and to present
evidence in support of their requests, so no due process
violation occurred.

24

## Conclusion

Based on the conclusions set forth above, the Order is affirmed and the appeal dismissed

New York, NY
March 12, 2013

ROBERT W. SWEET
U.S.D.J.